**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

**FILED**

May 21, 2018
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MURRAY AMERICAN ENERGY, INC.,**
**Employer Below, Petitioner**

**vs.)    No. 18-0056**  (BOR Appeal No. 2015028184)
(Claim No. 2052110)

**JOHN VINESKY,**
**Claimant Below, Respondent**

**MEMORANDUM DECISION**

Petitioner, Murray American Energy, Inc., by, Denise D. Pentino and Aimee M. Stern, its attorneys, appeals the decision of the West Virginia Workers' Compensation Board of Review. John Vinesky, by William C. Gallagher, his attorney, filed a timely response.

The issue on appeal is vocational rehabilitation. On February 14, 2017, the claims administrator closed the claim for vocational rehabilitation services and benefits. The Office of Judges reversed the claims administrator in its July 24, 2017, Order. The Order was affirmed by the Board of Review on December 28, 2017. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds that the Board of Review's decision is based upon material misstatements and mischaracterizations of the evidentiary record. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion.

Mr. Vinesky, a rib pinner, injured his left knee on April 13, 2015, when he injured his left knee after stepping on a rock in the mine. He was diagnosed with a knee sprain. The claims administrator held the claim compensable for a sprain of an unspecified site of the knee and leg on May 15, 2015. On June 19, 2015, Mr. Vinesky underwent a left knee arthroscopic partial medial meniscectomy. He was released to return to full duty work on August 10, 2015.

Mr. Vinesky worked for one day before seeking treatment for his left knee, which he injured after stepping on a pile of loose coal. Mr. Vinesky was diagnosed with left knee pain due

1

to possible sprain. On December 9, 2015, Mr. Vinesky underwent a left knee arthroscopic lateral release. The pre-operative diagnosis was possible recurrent medial meniscus tear and lateral patellar compression syndrome. The post-operative diagnosis was left knee stable lateral meniscus tear and lateral patellar compression syndrome. Mr. Vinesky underwent a functional capacity evaluation on April 5, 2016, which showed he could perform light physical demand level jobs. His physical limitations presented a barrier to return to work unless modifications could be made. Mr. Vinesky had some minimal range of motion and strength deficits in the left knee but was mainly limited by pain with weight bearing activities. Mr. Vinesky's permanent work restrictions included occasional lifting and carrying up to twenty pounds; sitting up to eight hours per day; standing, walking, or driving up to one hour per day; and no climbing, crawling, or squatting.

Erin Saniga, M.Ed., CRC, LPC, performed a vocational evaluation on July 11, 2016. She noted Mr. Vinesky complained of severe swelling of the left knee, severe left knee pain, and difficulty going up and down steps. Mr. Vinesky wore a brace and walked with one crutch. He had been advised to wean himself off of the crutch, but had not been able to do so. Mr. Vinesky reported that he had taken the civil service test for a maintenance position and that he had applied for front desk jobs at local hotels. Ms. Saniga concluded that Mr. Vinesky needed to explore his ability to transition to sedentary work. Mr. Vinesky expressed an interest in obtaining unemployment benefits and was told he could not receive rehabilitation benefits and unemployment benefits at the same time. He also expressed an interest in obtaining a CDL. Ms. Saniga advised this was beyond the restrictions imposed. She recommended a period of concurrent job retention and vocational exploration during which Mr. Vinesky could find jobs in the local labor market. She explained that he would be required to participate eight hours a day in vocational rehabilitation activities, as he had been released to return to work for eight hours a day.

The rehabilitation plan developed by Ms. Saniga included thirty days of vocational exploration, job retention, and rehabilitation temporary total disability. Mr. Vinesky started computer training and participated in thirty days of job search. The vocational plan was extended in December of 2016 and January of 2017. In a January 12, 2017, report, Ms. Saniga noted that Mr. Vinesky had applied for a number of positions for which he was not qualified or that were not within his physical capabilities. These included a help desk position, a business manager position, cardiology technical assistant, and dietary aide. On February 9, 2017, Ms. Saniga recommended no further vocational rehabilitation services. On February 14, 2017, the claims administrator closed the claim for vocational rehabilitation benefits as no evidence had been received to substantiate the continuation of benefits and no further vocational rehabilitation had been recommended.

Mr. Vinesky testified via deposition on April 21, 2017, that he understood the rehabilitation plan and worked with Ms. Saniga on finding jobs. He was required to look for jobs, which he did in person and online. He was offered a job earning $2.00 per hour, which Ms. Saniga said was not acceptable due to the low wage. She also advised him that many of the jobs for which he was applying were not within his physical restrictions. Mr. Vinesky also bid on jobs at the mining company through the union, but due to his low seniority he was not able to get one

of those jobs. The mining jobs usually were not jobs that were within his physical restrictions. He called some of the employers for jobs he applied to outside of the mines to see if the job was within his physical restrictions. He applied for jobs for which he thought he could suffer through the pain, even if they were outside of his physical capabilities. He was never really given a firm job offer. He requested authorization through the rehabilitation plan to enroll in a Microsoft Applications course at West Virginia Northern Community College.

On May 2, 2017, Ms. Saniga testified via deposition. She had identified 210 occupations that would be appropriate for Mr. Vinesky in relation to his education, background, work experience, and physical restrictions. Mr. Vinesky told her he had no computer skills. Therefore, she recommended Mr. Vinesky take a basic computer course to get him familiar with the keyboard and to enable him to become familiar with the use of the computer and its programs. She thought this would benefit him as he searched for jobs but also with the jobs themselves. Mr. Vinesky participated in the job exploration portion of his plan from July to November. This is the portion of the program that generally lasts thirty days. It lasted longer in his case in order to allow time for Mr. Vinesky to take the basic computer class. In her opinion, Mr. Vinesky obtained the basic computer skills he needed for employment from this class. Mr. Vinesky then participated in the job search portion of the plan for ninety days. Ms. Saniga had concerns about the type of jobs for which Mr. Vinesky applied as they were too physically demanding. There were also some position for which he was not qualified in terms of education and training. Ms. Saniga opined that the Microsoft Applications class Mr. Vinesky wanted to take would not alter his employability. This course was designed toward facilitating employment in a business office environment. She also opined that the way he presented himself to employers was negatively impacting his ability to obtain a job.

In its July 24, 2017, Order, the Office of Judges found the closure of the claim for vocational benefits was not appropriate as no evidence had been submitted to indicate Mr. Vinesky was not cooperating, was not participating, or failed to make satisfactory progress toward the completion of his plan. It also found Ms. Saniga's opinion that Mr. Vinesky was able to seek and apply for appropriate available employment on his own did not mean that his benefits should be terminated and was inconsistent with the hierarchy of rehabilitation services. The goal of the rehabilitation services was to return Mr. Vinesky to employment. The Office of Judges determined that the closure of the claim penalized the "cooperating and compliant" claimant who was seeking employment but had not found it yet. It also determined that "it seemed logical that rehabilitation services would continue to advise and help Mr. Vinesky in finding appropriate jobs to apply for until he is employed; or if no job is offered, to move onto the next point of the Hierarchy which would be employment by a new employer with on the job training". Therefore, the Office of Judges reversed the claims administrator's decision and reinstated the vocational rehabilitation services and benefits. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on December 28, 2017.

After review, we disagree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. The claims administrator closed the claim for vocational benefits as no evidence had been received to substantiate the continuation of benefits and no further vocational rehabilitation had been recommended. However, West Virginia Code of State

Rules § 85-15-4 establishes seven priorities that must be followed in providing rehabilitation services. The evidentiary record does not contain any findings regarding where Mr. Vinesky was placed on the hierarchy at the conclusion of his rehabilitation services, or why Ms. Saniga recommended ending the services. Additionally, the Office of Judges reasoning that rehabilitation services should be continued without any findings of fact in relation to the hierarchy was not proper.

For the foregoing reasons, we find that the decision of the Board of Review is based upon material misstatements and mischaracterizations of the evidentiary record. Therefore, the decision of the Board of Review is reversed and remanded with instructions for the Office of Judges to determine whether Mr. Vinesky is entitled to additional vocational rehabilitation using the seven-step hierarchy of vocational rehabilitation.

Reversed and Remanded.

**ISSUED: May 21, 2018**

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin J. Davis
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

**DISSENTING**:
Justice Menis E. Ketchum